**No. 04-1743 T**
**(Judge Susan G. Braden)**

---

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**WILLIAM H. SCHELL AND RUBY G. SCHELL,**

**Plaintiffs,**

**v.**

**UNITED STATES OF AMERICA,**

**Defendant**.

# Plaintiffs' Response to United States' Motion to Dismiss the Complaint

R:\DOCS\TAXCONT.T\twrr3318.sc1.wpd

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . (iii)
1. Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
2. Argument in Response . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
a. By Law Section 6224(c) Settlements Comprehensively Settled All Partnership Items for the Years at Issue . . . . . . . . . . . . . . . . . 3
b. The Facts of This Case Prove These Settlements Comprehensively Settled All Partnership Items . . . . . . . . . . . . . . . . . . . . 9
c. These Settlements Cannot Be Re-Opened . . . . . . . . . . . . . . . . . . . . . . . . 11
d. The Loss At Issue is Not the Same Loss at Issue in 1986 . . . . . . . . . . . . 13
e. The Tax Court Decision Is Not Controlling . . . . . . . . . . . . . . . . . . . . . . . 14
f. Basis Is an Affected Item and the Schells Can Prove Their Basis . . . . . . . . . . . . . . . . . . . . . . . . . 15
3. Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

| Index to Appendix B | | |
|---|---|---|
| Exhibit No. | Page(s) | Description |
| 1 | 0002-0010 | Motion for Leave to Treat the Request for Consistent Settlement on Behalf of Don Zinman as a Timely Request for Consistent Settlement under I.R.C. §6224(c)(2) Filed March 6, 2000 in *Canyon Desert Vineyards v. C.I.R.* before the Tax Court at Docket No15054-91 |
| 2 | 0012-0012e | Notice of Consistent Settlement Filed April 23, 1999 in *Vista Ag Realty Partners v. C.I.R.* before the Tax Court at Docket No. 12539-90 |
| 3 | 0014-0016 | Docket Entries for Other Rule 248(c) Notices Filed in *Canyon Desert Vineyards v. C.I.R.* before the Tax Court at Docket No15054-91 |
| 4 | 0018-0026 | Docket Sheet for in *Canyon Desert Vineyards*, Docket No15054-91 |
| 5 | 0028-0034 | Docket Entries for Other Rule 248(c) Notices Filed in *Vista Ag Realty Partners v. C.I.R.*, Docket No. 12539-90 |
| 6 | 0036-0042 | Docket Sheet for *Vista Ag Realty Partners v. C.I.R.*, Docket No. 12539-90 |
| 7 | 0044-0049 | IRS Form CG-4549A for James D. Crocker Dated May 8, 2002 with Transmittal Letter and Attachments |
| 8 | 0051-0058 | IRS Form CG-4549A for John Harper dated July 10, 2002 with Transmittal Letters and Attachments |
| 9 | 0060-0062 | IRS Memorandum dated January 6, 2000 |
| | 0063-0065 | Rule 56(f) Declaration of Teresa J. Womack |

 R:\DOCS\TAXCONT.T\twrr3318.sc1.wpd

# TABLE OF AUTHORITIES

## Cases

*Alexander v. United States,*
44 F.3d 328 (5th Cir.1995) . . . . . . . . . . 14
*Am. Pelagic Fishing Co. v. United States,*
379 F.3d 1363 (Fed.Cir.2004) . . . . . . . . . . 3
*Anderson v. Liberty Lobby, Inc*.,
477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) . . . . . . . . . . 3
*Celotex Corp. v. Catrett,*
477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) . . . . . . . . . . 3
*Cinema '84 v. CI.R*.,
294 F.3d 432 (2nd Cir., 2002),
*aff'g sub non Greenberg Bros*., 111 T.C. 198 (1998) . . . . . . . . . . 6
*Dial U.S.A., Inc., v. Commissioner*,
95 T.C. 1 (1990) . . . . . . . . . . 15
*Gingerich v. United States*,
82 Fed.Appx. 35, 2003 WL 22854662,
92 A.F.T.R.2d 2003-7224 (Fed.Cir. 2003) . . . . . . . . . . 4
*Grapevine Imports, Ltd, and T-Tech, Inc. v. United States*,
71 Fed.Cl. 324 (2006) . . . . . . . . . . 14
*Greenberg Bros. Partnership # 4 v. Commissioner*,
111 T.C. 198 (1998) . . . . . . . . . . 5-7
*Keener v. United States*,
76 Fed.Cl. 455 (2007) . . . . . . . . . . 5, 7-9, 11, 14
*Long Island Sav. Bank, FSB v. United States,*
503 F.3d 1234 (Fed.Cir. 2007) . . . . . . . . . . 3
*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) . . . . . . . . . . 3
*Monti v. United States*,
223 F.3d 6 (2nd Cir. 2000) . . . . . . . . . . 15
*Northwest Louisiana Fish & Game Preserve Comm v.United States*,
— Fed.Cl. — , 2007 WL 3277280 . . . . . . . . . . 1-3
*Prochorenko v. United States*,
243 F.3d 1359 (Fed.Cir., 2001) . . . . . . . . . . 15
*Reed Island-MLC, Inc. v. United States,*
67 Fed.Cl. 27 (2005) . . . . . . . . . . 2
*Rocovich v. United States,*
933 F.2d 991 (Fed.Cir. 1991) . . . . . . . . . . 1
*Scheuer v. Rhodes,*
416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) . . . . . . . . . . 1
*Thoen v. United States,*
765 F.2d 1110 (Fed.Cir.1985) . . . . . . . . . . 2

*Toxgon Corp. v. BNFL, Inc.*,
312 F.3d 1379 (Fed.Cir.2002) . . . . . 2
*Treaty Pines Inv. Partnership v. Commissioner*,
967 F.2d 206 (5th Cir.1992) . . . . . 14
*University Heights at Hamilton Corp v. Commissioner*,
97 T.C. 17 (1991) . . . . . 15
*Weiner v. United States*,
389 F.3d 152 (5th Cir. 2004) . . . . . 15

**Statutes**

26 U.S.C. §6224(a) . . . . . 14
26 U.S.C. §6224(c) . . . . . 3-11, 14
26 U.S.C. §6224(c)(1) . . . . . 4, 6-8, 11, 14
26 U.S.C. §6224(c)(2) . . . . . 4, 6
26 U.S.C. §6226(c) . . . . . 15
26 U.S.C. §6226(d) . . . . . 14
26 U.S.C. §6228(a)(4)(B) . . . . . 14
26 U.S.C. §6231(b)(1)(C) . . . . . 11, 14, 15
26 U.S.C. §7422(h) . . . . . 14, 15

**Regulations**

52 FR 6779-01, 6787-8, 1987-1 C.B. 325, 1987 WL 860309 (March 5, 1987) . . . . . . . . . . . . . . . 4
64 FR 3837-01, 1999-1 C.B. 682, 1999 WL 33562464 (January 26, 19999) . . . . . . . . . . . . . . . . . 5
66 FR 50541-1, 50552-3, 2001-2 C.B. 344, 2001 WL 34028604 (October 4, 2001) . . . . . . . . . . . 5
Temp.Treas.Reg. §301.6224(c)-3(a)T . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5
Temp.Treas.Reg. §301.6224(c)-3(b)T . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6
Temp.Treas.Reg. §301.6224(c)-3T . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
Treas.Reg. §301.6224(c)-3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

**Rules**

RCFC 12(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2
RCFC 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2
RCFC 12(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
RCFC 56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
RCFC 56(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
Tax Court Rule 247(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
Tax Court Rule 248(c)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**Other Authorities**

IRS Litigation Bulletin No. 41, IRS LB 41,
1988 WL 897689 (IRS LB) (December, 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
IRS Non Docketed Service Advice Review,
2002 WL 32167989 (IRS NSAR),
2002 IRS NSAR 20,301 (August 13, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
Litigation Guideline Memorandum, 1990 WL 1086188 (IRS LGM),
1990 LGM TL-87 (June 4, 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

Plaintiffs William H. Schell and Ruby G. Schell ("Plaintiffs" or the "Schells") object and respond to the Untied States' Motion to Dismiss the Complaint and in support would show as follows:

## 1. Standard of Review

The United States has moved to dismiss for lack of subject matter jurisdiction under the Rules of the Court of Federal Claims ("RCFC") 12(b)(1) and, in the alternative, moved to dismiss under RCFC 12(b)(6) for failure to state a claim upon which relief can be granted.

In *Northwest Louisiana Fish & Game*, Judge Firestone summarized the treatment of RCFC 12(b)(1) motions to dismiss in this court.[1] In considering a jurisdictional motion, allegations in the complaint are construed most favorably to the plaintiff, resolving ambiguities in its favor.[2] The court may look beyond the pleadings and "inquire into jurisdictional facts" to determine whether jurisdiction exists.[3]

While RCFC 12(c) provides that if "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment," in most circumstances this provision does not apply to RCFC 12(b)(1) motions to dismiss for lack of subject

---

1 *Northwest Louisiana Fish & Game Preserve Comm v. United States*, — Fed.Cl. —, 2007 WL 3277280, *4-*5, Docket No. 02-1031L (Fed.Cl., October 31, 2007).

2 *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

3 *Rocovich v. United States,* 933 F.2d 991, 993 (Fed.Cir.1991).

matter jurisdiction.[4] However, a RCFC 12(b)(1) motion *may* convert into a motion for summary judgment "when the jurisdictional question is inextricably intertwined with the merits of the case."[5]

The complaint is the only pleading filed in this case. In its motion to dismiss, the government introduced and relied upon documents not included with or referenced in the complaint that address jurisdiction and the merits of the case, *i.e.,* as alleged, this court lacks jurisdiction to address partnership items at the heart of the claims because whether plaintiffs are entitled to a loss deduction for their partnership interest turns on whether the underlying transactions are shams. Plaintiffs response below also relies on documents outside the Complaint. The government's motion is not so much for dismissal under RCFC 12(b)(1), but for summary judgment on the merits coupled with a motion in *limine* restricting the introduction of evidence with respect to a sub-issue the government asserts the Court lacks jurisdiction to determine.

Judge Firestone also summarized the treatment of RCFC 12(b)(6) motions to dismiss in this court.[6] If a RCFC 12(b)(6) motion relies on matters outside the pleadings and not excluded by the court, then RCFC 12(c) dictates that "the motion shall be treated as one for summary judgment."

As Judge Firestone noted, the well-settled standard is that summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party

---

4 *Reed Island-MLC, Inc. v. United States,* 67 Fed.Cl. 27, 32 (2005) (citing *Toxgon Corp. v. BNFL, Inc.,* 312 F.3d 1379, 1383 (Fed.Cir.2002)).

5 *Thoen v. United States,* 765 F.2d 1110, 1114 (Fed.Cir.1985).

6 *Northwest Louisiana Fish & Game* at *4-*5.

is entitled to judgment as a matter of law."[7] In making that consideration, the court's role is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."[8] The moving party must first demonstrate the absence of a genuine issue of material fact. To defeat summary judgment, the non-moving party must present evidence which demonstrates such a genuine issue.[9] Whether a genuine issue of material fact exists, requires the court to consider the evidence and resolve all doubts in the light most favorable to the non-moving party.[10]

The argument and evidence presented below will show there are genuine issues of material fact in this case that preclude summary judgment. Moreover, pursuant to RCFC 56(f), the evidence introduced below is indicative that additional discovery in this case will lead to admissible evidence showing that plaintiffs are entitled to the basis adjustment deductions that they have claimed.

**2. Argument in Response**

**a. By Law Section 6224(c) Settlements Comprehensively Settled All Partnership Items for the Years at Issue**

Contrary to the government's assertions, by law the Schells' Form 870-P(AD) settlement agreement was not partial, but comprehensive.

---

7 *Northwest Louisiana Fish & Game* at *4-*5, *citing* RCFC 56(c); and *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

8 *Liberty Lobby,* 477 U.S. at 249.

9 *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Long Island Sav. Bank, FSB v. United States,* 503 F.3d 1234, 1243-44 (Fed.Cir. 2007).

10 *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587-88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Am. Pelagic Fishing Co. v. United States,* 379 F.3d 1363, 1371 (Fed.Cir. 2004).

All promulgated Form 870-P(AD) agreements state that "[u]nder the provision of section §6224(c)" the partner offers to enter into a settlement agreement "with respect to the determination of partnership items of the partnership for the year shown on the schedule of adjustments."

Tax settlements are generally governed by the common law of contracts.[11] But under §6224(c) there are two types of interdependent agreements that are unique and largely governed by statute and regulation, particularly the scope of those settlements and whether the IRS is required to enter into a "Consistent Agreement" with other partners.

Under §6224(c)(1), an original settlement between the IRS and a partner in a partnership "will be binding on all parties to such agreement with respect to partnership items for such partnership taxable year," except as otherwise provided in the agreement.

If the IRS enters into a §6224(c)(1) original settlement with respect to partnership items for any partnership taxable year, then under §6224(c)(2) other partners have a right to enter into a "Consistent Agreement" on "terms for the partnership taxable year which are consistent with those contained in such settlement agreement."

As enacted for tax years after December 31, 1982, Temp.Treas.Reg. §301.6224(c)-3T(a) provides that "Settlements shall be comprehensive, that is, a settlement may not be limited to selected items."[12]

---

11 *See*, *Gingerich v. United States*, 82 Fed.Appx. 35, 2003 WL 22854662, 92 A.F.T.R.2d 2003-7224 (Fed.Cir., December 2, 2003) (No. 03-5027).

12 52 FR 6779-01, 6787-8, 1987-1 C.B. 325, 1987 WL 860309 (March 5, 1987).

Temp.Treas.Reg. §301.6224(c)-3T(b) was amended effective January 26, 1999.[13] The comprehensive settlement requirement at Temp.Treas.Reg. §301.6224(c)-3T(a) was not amended by those changes. Consequently, §6224(c) settlements were still required to be comprehensive pursuant to that regulation. With the 1999 amendments, Temp.Treas.Reg. §301.6224-3T was re-written to clarify that "[c]onsistent agreements must be identical to the original settlement (that is, the settlement upon which the offered settlement terms are based). A consistent agreement must mirror the original settlement and may not be limited to selected items from the original settlement." While the Schells settlement is subject to the original regulation, the amendments clarified that their settlements were required to be consistent with and mirror any consistent AMCOR settlements and comprehensively settled *all* partnership items.

Effective October 4, 2001, Temp.Treas.Reg. §301.6224(c)-3T was removed and replaced with Treas.Reg. §301.6224(c)-3.[14] That new regulation kept the "mirror" image language from the 1999 amendments to Temp.Treas.Reg. §301.6224(c)-3T(b). The new regulation also rewrote Temp.Treas.Reg. §301.6224(c)-3T(a) to now provide for settlements with the IRS with respect to partnership items, "whether comprehensive or partial, ...."

Precedent respecting the scope of §6224(c) settlements is sparse, with only two relevant cases, *Greenberg Bros*.[15] and *Keener*.[16] In *Greenberg Bros*., the *government* asserted and the Tax Court agreed that the "comprehensive" settlement language in the regulation not only requires the

---

13 64 FR 3837-01, 1999-1 C.B. 682, 1999 WL 33562464 (January 26, 19999).

14 66 FR 50541-1, 50552-3, 2001-2 C.B. 344, 2001 WL 34028604 (October 4, 2001).

15 *Greenberg Bros. Partnership # 4 v. Commissioner*, 111 T.C. 198 (1998).

16 *Keener v. United States*, 76 Fed.Cl. 455 (2007).

§6224(c)(2) *consistent* settlement to settle *all* partnership items for the year, but also requires the *original* §6224(c)(1) agreement that is subject to consistent settlement to settle *all* of a partner's partnership items for the taxable year because the partnership item terms must be consistent between the original agreement and the consistent agreement.[17] This mirror-image requirement was recognized in the 1999 amendments to the regulation. The Second Circuit affirmed that the Secretary's interpretation of the statute and regulation in *Greenberg Bros*. was reasonable.[18]

*Greenberg Bros*. is also consistent with the IRS's official litigating position for the years at issue. In 1990, the IRS instructed its litigating personnel that Temp.Treas.Reg. §301.6224(c)-3T(b) requires all §6224(c) settlements to comprehensively settle all partnership items for the tax year and "..., if a settlement agreement leaves any items to be litigated either at the time it is executed or at the time a request for consistent terms is made, it is our position that the agreement will not be subject to consistent settlement."[19]

In 2001, Temp.Treas.Reg. §301.6224(c)-3T was removed and replaced with Treas.Reg. §301.6224(c)-3. But the amendment recognizing partial §6224(c) settlements was not effective until October, 2001, years after the Schells' settlement in 1997. That amendment does not affect the Schells' settlement, which is controlled by prior regulation requiring §6224(c) settlements to comprehensively settle all partnership items for the tax year.

---

17 *Greenberg Bros*. at 206.

18 *Cinema '84 v. CI.R*., 294 F.3d 432 (2nd Cir., 2002), *aff'g sub non Greenberg Bros.*, 111 T.C. 198 (1998).

19 Litigation Guideline Memorandum, 1990 WL 1086188 (IRS LGM), 1990 LGM TL-87 (June 4, 1990). This memorandum is not precedent, but is persuasive indicia that the IRS is aware that its standard promulgated TEFRA settlement forms are comprehensive for the years at issue.

In *Keener*, Judge Allegra found that other amendments addressing limitations periods for partial settlements, proposed in 1992 and enacted in 1999, suggested that the AMCOR §6224(c) settlements were partial at the time they were entered into, which span the course of 1997-2000. Those amendments may apply to other types of TEFRA settlements because there is no general prohibition against partial partnership-item settlements in TEFRA. It is well recognized that there are multiple options for settling TEFRA tax controversies. For example, there would be no dispute that a Form 906 closing agreement can partially settle partnership items. So long as a closing agreement did not include the recitation that it is a settlement under §6224(c), there would be no statutory requirement that the agreement be comprehensive.[20] But in Footnote 2 to the 1990 LGM, the IRS recognized the difference between §6224(c) settlements, which it interpreted to be comprehensive, and other types of settlements that it acknowledged could be partial but should be cautiously entered into because of the uncertainty with respect to the statute of limitations.[21]

In 2002, the IRS cautiously accepted that after 1999, even §6224(c) settlements can be partial. Relying on (i) the 1999 amendments to the regulation which specifically recognized "partial" settlements, and (ii) the parenthetical in §6224(c)(1), which states that a settlement is binding with respect to the determination of partnership items for the partnership taxable year *(except as otherwise provided in such agreement*), the IRS issued guidance stating §6224(c) settlements do not have to settle all partnership items of a partnership for the taxable year. The IRS's post-1999 position is that

---

[20] *See e.g.*, IRS Litigation Bulletin No. 41, IRS LB 41, 1988 WL 897689 (IRS LB) (December, 1988). This Bulletin is not cited as precedent but as persuasive evidence of that the IRS viewed TEFRA related settlements in the same manner as the Schells and other AMCOR partners. Closing agreements were used to settle the tax controversy in *Greenberg Bros*., but included a statement that they were settlements under §6224(c).

[21] 1990 WL 1086188, 1990 LGM TL-87 (June 4, 1990), *supra*.

parties can enter into a partial settlement but the statute is clear – *the agreement must state that it is partial*.

The IRS has issued specific instructions as to how existing promulgated forms, such as the series 870 settlement agreements, must be amended to identify the settlement as partial. Each page must be annotated "Partial Agreement." And there must be a conspicuous statement that "This partial agreement becomes effective upon execution by the Commissioner of Internal Revenue or his delegate. It does not settle all of the partnership items, and the partner is still party to the unified proceedings for all issues not identified in this agreement. The period of limitations for assessing any tax attributable to the settled items shall be determined as if such agreement had not been entered into."[22]

Even if this Court should accept that §6224(c) agreements could be partial for the years at issue, §6224(c)(1) is clear – the agreement must state it is partial. The Schells' Forms 870-P(AD) did not.

The government has asserted the Form 870-P(AD), §6224(c) settlement was partial. In *Keener*, Judge Allegra upheld that assertion and dismissed the claims at issue in that case for much the same reason as the government has asserted in this case. *Keener* is currently on appeal before the

---

[22] IRS Non Docketed Service Advice Review, 2002 WL 32167989 (IRS NSAR), 2002 IRS NSAR 20,301 (August 13, 2002). [Emphasis in original]. This memorandum is not precedent, but is persuasive indicia that the IRS is aware that its standard promulgated TEFRA settlement forms are comprehensive unless additional language is included to identify them as partial.

Federal Circuit.[23] The government has filed one other motion to dismiss a similar claim by another AMCOR partner on almost identical grounds.[24] The *LeBlanc* motion is briefed and pending decision.

**b. The Facts of This Case Prove These Settlements Comprehensively Settled All Partnership Items**

Even though the scope of §6224(c) settlements is largely controlled by law, the facts of this prove the settlements were comprehensive.

The IRS chose and prepared the Form 870-P(AD), which state they are §6224(c) settlements The terms of the settlements were substantively similar across the 43 AMCOR partnerships, differing only by the dollar amount of the adjustments.

The settlements were intended to be comprehensive because the IRS issued Form 870-P(AD) "Consistent Agreements" for most, if not all, of the partnerships subsequent to the original Form 870-P(AD) settlements.

The Schells accepted the IRS's original invitation to offer settlement. In letters sent to individual AMCOR partners who did not accept the original invitation to settle, the Office of Chief Counsel for the IRS re-opened the period for partners to request consistent settlements and stated that (i) this "does not involve a new settlement offer, rather, it merely lengthens the time period for requesting settlement consistent with one previously offered," and (ii) by settling partners "would avoid further litigation and penalties." [App: 0007][25]

---

[23] *Keener v. United States*, Docket No. 08-5004 in the Court of Federal Appeals for the Federal Circuit.

[24] *LeBlanc v. United States*, Docket No. 05-743T, before Judge Allegra.

[25] References to [App:"x"] are to Bates stamped page "x" of Plaintiffs' Appendix B filed with this response.

Moreover, assuming *arguendo* it was possible for the years at issue, the IRS did not amend the Form 870-P(AD) at issue to expressly state it was a partial settlement as required by statute. Instead, the Form 870-P(AD) prepared by the IRS and sent to the AMCOR partners like the Schells incorporates only the standard, §6224(c) comprehensive settlement language: "offers to enter into a settlement agreement *with respect to the determination of partnership items of the partnership for the year* shown on the attached schedule of adjustments."

The final Tax Court decisions were entered over four years after the Schells' Form 870-P(AD) agreements were accepted by the IRS. The government did not wait for the allegedly unresolved character of the partnership items to be determined by the Tax Court or rely on the alleged "findings" in those decisions before assessing §6621(c) penalty interest against the Schells. The IRS assessed tax, interest, *and* §6621(c) penalty interest at the same time it assessed the tax and standard interest.

The government's conduct in the partnership proceedings further proves the settlements were comprehensive and conclusive. Tax Court Rule 248(c)(1) requires the IRS to notify that court when there is a settlement agreement or consistent settlement with participating partners. Tax Court Rule 247(b) defines a participating partner as one who has filed an election to intervene or participate in the partnership proceeding. There is no settlement notice requirement for nonparticipating partners. TheSchells were not participating partners.

The IRS filed Rule 248(c)(1) notices in the AMCOR partnership-level proceedings, including the partnerships at issue – Vista Ag Realty Partners and Canyon Desert Vineyards, to notify the Tax Court that partners had signed Form 870-P(AD) consistent settlement agreements. [App: 002-0010, 0012-12e; see also the Specific Docket Entries for Rule 248(c)(1) notices filed by the IRS in *Canyon*

*Desert Vineyards v. C.I.R.*, Docket No. 15054-91 at 0014-0016 as reflected on the Docket Sheet for for *Canyon Desert Vineyards* at App. 0018-0026, and the Specific Docket Entries for Rule 248(c)(1) notices filed in *Vista Ag Realty Partners v. C.I.R.*, Docket No. 12539-90 at App. 0028-0034 as reflected on the Docket Sheet for *Vista Ag Realty Partners* at App. 0036-0042 ]. In those notices the IRS represented to the Tax Court that pursuant to §6231(b)(1)(C), the partners' partnership items became nonpartnership items as of the date of the settlement and those participating partners were ***"no longer a party to the proceeding."*** [App: 0012, emphasis added.] The IRS's statements were unqualified and unequivocal – partners who entered into the Form 870-P(AD) settlements were no longer parties to the Tax Court cases for any reason.

The AMCOR settlements had identical results on the Tax Court's jurisdiction, regardless of whether the partner was "participating" or "nonparticipating." And because those consistent settlements were required by regulation to be a mirror image of the original §6224(c)(1) agreements, the Schells' partnership items were likewise comprehensively settled and they were no longer no longer parties to the Tax Court proceedings either.

**c. These Settlements Cannot Be Re-Opened**

As Judge Allegra recognized in *Keener*, "partnership items" include both tax items *and*, by regulation, the characterization of tax items. The comprehensive nature of §6224(c) settlements also applies to the partnership-item characterizations of partnership items. To hold otherwise would split the item from its characterization and sanction subsequent characterizations at odds with the prior underlying adjustment, *e.g.*, allowing over half of the partnership-item farming expenses and later inconsistently asserting the same farming expenses were sham transactions.

The Schells' settlement was also conclusive and final. The express language of §6224(c) and the Form 870-P(AD) both state these settlements cannot be re-opened "in the absence of a showing of fraud, malfeasance, or misrepresentation of fact." There has been no such showing in these cases by any party.

**d. The Loss At Issue is Not the Same Loss at Issue in 1986**

The IRS has recognized that the amounts at issue are not the same amounts as were settled. The 1993 and 1995 loss deductions are not substantially the same partnership loss deduction they claimed in 1985 and 1986, as represented by the government. The 1993 and 1995 losses represent the Schells' outside basis in the investment in the partnerships as of the time the partnerships were terminated in 1993 and 1995 and is a recognizable tax loss in that year in accordance with Rev.Rule 93-80.

In conjunction with the assessment of the 1985 and 1986 deficiencies, the IRS included notices to the partners with the Form CG-4549A that they were entitled to a basis adjustment refund claim. On an attachment to the Form CG-4549A that was conspicuously titled "AMCOR CLAIM INSTRUCTIONS," the IRS notified the partners as follows:

> A claim may be filed to reflect the increase in your basis due to the sale of the partnership interest. In addition to the appropriate form, please send a copy of the tax return for the year in which the sale of the partnership interest was reported. If there is a capital loss carryover issue (you already reported a $3,000 loss on Schedule D), we will need a claim for the year(s) that the loss was carried to. Include a coy of any examination reports that reflect the amount of losses disallowed or income increased.
>
> In order to identify the claim as "AMCOR," please annotate the top of the 1040X with the following:
>
> **AMCOR Claim – forward to TEFRA Operation Stop 639**
>
> [App: 0049 and 0052].

This notice to partners is consistent with and follows a January 6, 2000 IRS Memorandum from Regional Counsel to TEFRA Technical Unit in Ogden Utah that set out the grounds for the basis adjustment claims such as those at issue in this case. [App:0060-0062]. That Memorandum

found that basis claims resulting from the AMCOR Form 870-P(AD) settlements were proper and should be paid.

The only difference between the Schells' claims and other claims for basis adjustment solicited by the IRS with the notice included in the Form CG4549-A is that their loss did not result from sale but termination, which under existing case law would have been treated as an ordinary loss. There is no material difference between the Schells and the partners who received invitations to submit claims as described in the Form CG4549-A notices.

**e. The Tax Court Decision Is Not Controlling**

*Keener* begins with a summary of accepted law respecting pre-1999 TEFRA settlements:

> If a partner's tax liability might be affected by the outcome of the litigation of partnership items, that partner may participate fully in the proceeding. *Id.* at §§6224(a), 6224(c). ... To the extent a partner settles his partnership tax liability with the IRS, the partner no longer participates in the partnership level litigation, and instead is bound by the terms of the settlement agreement. 26 U.S.C. §§6224(c)(1), 6226(d), §6228(a)(4)(B). Partnership items convert to nonpartnership items when the IRS enters into a settlement agreement with the partner with respect to such items. *Id.* at §6231(b)(1)(C). If a partner files an action for a refund attributable to partnership items, but those items have been converted through a settlement agreement, the jurisdictional bar of §7422(h) no longer applies. *See Alexander v. United States,* 44 F.3d 328, 331 (5th Cir.1995).[26]

Citing *Alexander* and *Treaty Pines*, the Court of Federal Claims has recognized that if a partner settles his partnership items, subsequent determinations at the partnership level will not apply to the settling partner, and §7422(h)'s jurisdictional bar no longer applies.[27] In *Alexander* and *Treaty Pines*, the Fifth Circuit determined that §7422(h) does not bar claims related to partnership items

---

26 *Keener* at 459. This Court has relied on the same summary in *Grapevine Imports, Ltd, and T-Tech, Inc., as Tax Matters Partner, v. United States*, 71 Fed.Cl. 324, 327-8 (June 14, 2006).

27 *See Olson v. United States*, 37 Fed.Cl. 727, 733-34 (1997), *citing Alexander* at 331 and *Treaty Pines Inv. Partnership v. Commissioner,* 967 F.2d 206, 210 (5th Cir.1992).

once partnership items convert to nonpartnership items and are no longer subject to any partnership-level proceeding.[28] This is a sister issue to the Federal Circuit's decision in *Prochorenko* that §7422(h) should not be read so broadly as to bar all claims related to partnership items.[29]

The settlements were comprehensive and final and did not reflect the grounds for the agreed adjustments. The partners who settled, like the Schells, ceased to be parties to the partnership-level proceeding before the Tax Court Decision was entered and are not subject to that decision. However, even if they were subject to that Decision, and the Decision disallowed a portion of the deductions on the basis that the underlying transactions lacked economic substance, that finding should result in nonrecognition of the transaction. Therefore, the disallowed deductions would be treated as having no substance and not as nondeductible expenses that would reduce the taxpayer's basis.

### f. Basis Is an Affected Item and the Schells Can Prove Their Basis

A partner's basis in his partnership interest is an affected item, not a partnership item, and can be determined only in a partner-level proceeding, subject to any final partnership level determinations which might affect it. The *Dial* court held that basis is not a partnership item because it is not required to be taken into account for the taxable year under subtitle A.[30] It is a substantive affected item, however, because a partner's basis is partially comprised of partnership items, such

---

28 *Weiner v. United States*, 389 F.3d 152, 155 (5th Cir. 2004); §6226(c), (d), §6231(b)(1)(C).

29 *Prochorenko v. United States*, 243 F.3d 1359, 1363 (Fed.Cir., 2001), *citing Monti v. United States*, 223 F.3d 6 (2nd Cir. 2000).

30 *Dial U.S.A., Inc., v. Commissioner*, 95 T.C. 1 (1990).

as debt.[31] The partner's loss on termination of his partnership interest is a partner-level determination and does not require any re-determination of partnership items.

As discussed above, with just the evidence available to the Court in the government's motion and this response, it is apparent that the Schells' basis has been properly determined and is not based on reclaiming the loss denied in 1985 and 1986. However, the government has not filed an answer in this case, nor has any discovery been had. Any determination of the merits of the claim for refund is premature. Further discovery will lead to evidence proving the termination of the Schells' interest in the partnership and the amount of loss incurred upon timely and proper development of this case.

With proper discovery, the Schells will show that the deductions were only partially denied in 1985 and 1986 and that the subsequent years partnership returns were accepted as filed and reflected the never challenged income and deductions resulting from the partnership's activities other than those challenged by the government in 1985 and 1986.The evidence will show that the IRS made no adjustments to any of the partnership's returns from 1987 through 2000, when it filed its final return. The evidence will show that the Schells' outside basis loss in 1993 and 1995 resulted from partnership income reported between 1986 and 1995 for each respective partnership.

The cases cited by the government are inapplicable to this case, where only a portion of the first year's transactions were found to lack economic substance (even if that finding is held to be applicable to the Schells) and roughly half of the partnership's activities in its first year were sustained and its long term activities over more than a decade thereafter were not challenged. The Schells will show that this partnership carried on a long-term program to acquire and develop agricultural land separate and apart from the first year's contracted crop growing program that

---

31 *University Heights at Hamilton Corp v. Commissioner*, 97 T.C. 17 (1991).

resulted in the first year challenge to deductions for crop expenses. This completely distinguishes it from the cases cited by the government where substantially all of the entities transactions were found to be shams or purely tax motivated.

The government's representation of how the Schells basis was computed is patently wrong and fails to reflect the income reported by the partner from the partnership in years after 1986, in each instance increasing his tax basis in the partnership. The Schells do not assert that they had a substantial basis in the partnership interest at the end of 1985 and 1986, as the government implies, but that even beginning with zero basis at the end of 1985 and 1986, their basis by 1993 and 1995 was as claimed on their refund claim. The Schells' claim is also completely consistent with the notice sent by the IRS to many partners regarding a potential capital loss on a sale of their interest and with the guidelines set out in the January 6, 2000 Regional Counsel Memorandum that provided as follows:

> Substantiation of "Basis" Claim:
>
> The Project investor must have settled their partnership items and must have paid the additional amount of tax required under the settlement. Proof that the investor entered into a settlement is the fully extended Form 870-P(AD). The Form 870-P(AD) will show the year for which the additional liability was agreed to. The individual investor's transcript of account for this taxable year should show an assessment of tax being made as a result of a computational adjustment relating to the Form 870-P(AD). **The partner's basis will be increased, under the provisions of I.R.C. 705, by the amount his taxable income was increased as a result of the settlement. To determine this amount, the computational adjustment, supporting schedules and the final computation that was mailed to the investor by the Service Center should be obtained.**
>
> [App: 0061-0062, emphasis added.]

Under these circumstances, whether or not a partner's loss on his investment in the partnership is deductible on termination should be based on whether the partner entered into his



R:\DOCS\TAXCONT.T\twrr3318.sc1.wpd

investment with a *bona fide* profit motive. On information and belief, the evidence will show that the Schells had a *bona fide* profit motive for investing.

**3. Conclusion**

The Schells and other AMCOR partners have offered to voluntarily dismiss these particular basis adjustment AMCOR cases, not because they do not believe they can prove their case, but because the costs of proving up this case in the face of the government's new position simply exceeds the value of the refund claim. The government reneged on the IRS's representation that it would accept such claims and has now refused an agreed voluntary dismissal; therefore, the Schells are prepared to proceed.

WHEREFORE, Plaintiffs William H. Schell and Ruby G. Schell object to the granting of the government's motion on both grounds for dismissal and ask that the Court proceed with the claim on the merits, including an answer and briefing after discovery.

Respectfully,

/s/ Teresa J. Womack

Teresa J. Womack
Redding & Associates, P.C.
2419 W. T.C. Jester
Houston, Texas 77018
713-965-9244
713-621-5227 (Fax)
**Counsel for William H. Schell and Ruby G. Schell**