No. 04-1743 T
(Judge Susan G. Braden)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

WILLIAM H. SCHELL and RUBY G. SCHELL,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

# UNITED STATES' REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT

NATHAN J. HOCHMAN
Assistant Attorney General

DAVID GUSTAFSON
STEVEN I. FRAHM
KAREN SERVIDEA
Attorneys
Justice Department (Tax)
Court of Federal Claims Section
P.O. Box 26
Ben Franklin Post Office
Washington, D.C. 20044
(202) 616-3423
(202) 514-9440 (Fax)

# TABLE OF CONTENTS

**Page**

United States' Reply Brief in Support of its Motion to Dismiss the Complaint . . . . . 1

Introduction . . . . . 1

Argument . . . . . 2

I. Plaintiffs' Loss Claims Are Not Based on a Legally Valid Method of Computing the Basis of Schell's Partnership Interests . . . . . 2

A. The Court Lacks Jurisdiction over Plaintiffs' New Theory for Computing the Basis of Schell's Partnership Interests, Because It Constitutes a Substantial Variance from the Refund Claims Plaintiffs Submitted to the IRS . . . . . 3

B. The Court Lacks Jurisdiction over Plaintiffs' New Theory as Applied to Schell's Partnership Interest in CDV, Because Plaintiffs' Refund Claim Was Untimely Under the New Theory . . . . . 5

C. Plaintiffs' New Theory Fails, Because Any Increase in the Basis of Each of Schell's Partnership Interests Attributable to Income Reported by the Respective Partnership After Its Initial Year Would Be Offset by the Decrease in Basis Required by the Simultaneous Reduction in Schell's Share of Partnership Liabilities . . . . . 7

II. The Court Lacks Jurisdiction over Plaintiffs' Claims, Because They Depend on Determinations that TEFRA Bars this Court from Making: That the Partnerships' Transactions Were Not Shams and Were Entered into with a Profit Objective . . . . . 9

A. The Final Partnership-Level Records for 1985 and 1986 Do Not Contain a Determination that the Partnership Transactions Were Bona Fide and Entered into for Profit . . . . . 10

B. The Post-1985 and Post-1986 Partnership Records Lack a Determination that the 1985 and 1986 Partnership Transactions Were Bona Fide and Entered into for Profit . . . . . 14

III. The Materials Cited in Defendant's Motion to Dismiss Do Not Require the Court to Convert It into a Motion for Summary Judgment, but Even If They Did, the Court Should Grant the Motion . . . . . 15

**(Continuation):**

**Page**

A. The Court Can Consider the Materials Cited by Defendant without Converting Defendant's Motion to Dismiss under Rule 12(b)(1) into a Motion for Summary Judgment, Because the Motion Addresses the Court's Jurisdiction, Not the Merits of Plaintiffs' Claims . . . . . . . . . . 16

B. The Court Need Not Treat Defendant's Motion Under Rule 12(b)(6) as a Motion for Summary Judgment, Because It Depends Only on the Allegations in the Complaint, Indisputable Matters Integral to the Complaint, and Matters of Public Record . . . . . . . . . . 17

C. The Discovery Proposed by Plaintiffs Would Not Save their Claims from Failing as a Matter of Law or for Lack of Subject Matter Jurisdiction . . . . . . . . . . 19

Conclusion . . . . . . . . . . 20

Appendix A:

Internal Revenue Code of 1986 (26 U.S.C.)

§ 752 . . . . . . . . . . A-1

§ 6110 . . . . . . . . . . A-1

§ 6225 . . . . . . . . . . A-1

§ 6511 . . . . . . . . . . A-2

§ 7422 . . . . . . . . . . A-2

# TABLE OF AUTHORITIES

**Cases:** **Page**

*Atchinson, Topeka & Santa Fe Railway Co. v. United States*, 61 Fed. Cl. 84 (2004) . . . . . . . . . . . 8

*Buesing v. United States*, 47 Fed. Cl. 621 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*Buttke v. United States,* 13 Cl. Ct. 191 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Casazza v. Kiser*, 313 F.3d 414 (8thCir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Caterpillar Tractor Co. v. United States*, 218 Ct. Cl. 517, 589 F.2d 1040 (1978) . . . . . . . . . . . . . 8

*Cook v. United States, 220* Ct. Cl. 76, 599 F.2d 400 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Dickman v. Commissioner*, 465 U.S. 330 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Estate of Kokernot v. Commissioner*, 112 F.3d 1290 (5th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . 11

*Fickling v. United States*, 507 F.3d 1302 (11th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

*First Nationwide Bank v. United States*, 48 Fed. Cl. 248 (2000), *aff'd*, 431 F.3d 1342 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381 (10th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Gallo v. United States*, 76 Fed. Cl. 593 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Goldman v. Commissioner*, 39 F.3d 402 (2d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Greenberg Brothers Partnership #4 v. Commissioner*, 111 T.C. 198 (1998) . . . . . . . . . . . . . . . . . . 10

*Iosa v. Gentiva Health Services, Inc.*, 299 F. Supp. 2d 29 (D. Conn. 2004) . . . . . . . . . . . . . . . . . 18

*Jackson v. S. Cal. Gas Co.*, 881 F.2d 638 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Kaplan v. United States*, 133 F.3d 469 (7th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Keener v. United States*, 76 Fed. Cl. 455 (2007), *appeal docketed*, No. 08-5004 (Fed. Cir. Oct. 19, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10, 13, 17

*Kramer v. Time Warner Inc.*, 937 F.2d 767 (2d Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

**Cases (Continuation):**

**Page**

*Last v. United States*, 37 Fed. Cl. 1 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Levy v. Ohl*, 477 F.3d 988 (8th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Marinovich v. Commissioner*, 77 T.C.M. (CCH) 2075 1999 WL 339316 . . . . . . . . . . . . . . . . . . 15

*Minehan v. United States*, 75 Fed. Cl. 249 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Nault v. United States*, 517 F.3d 2 (1st Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 15

*Ottawa Silica Co. v. United States*, 699 F.2d 1124 (Fed. Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . 4

*Prati v. United States*, ___ Fed. Cl. ___ 2008 WL 1777380 . . . . . . . . . . . . . . . . . . . . . . . . 9, 17

*Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746 (Fed. Cir. 1988) . . . . . . . . . . . . . . . . 16

*Simmons Oil Corp. v. Tesoro Petroleum Corp.*, 86 F.3d 1138 (Fed. Cir. 1996) . . . . . . . . . . . . . . . 19

*Slovacek v. United States*, 36 Fed. Cl. 250 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Stone v. Writer's Guild of America West, Inc.*, 101 F.3d 1312 (9th Cir. 1996) . . . . . . . . . . . . . . . 18

*Thoen v. United States*, 765 F.2d 1110 (Fed. Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Union Pacific* R.R. *United States,* 182 Ct. Cl. 103, 389 F.2d 437 (1968) . . . . . . . . . . . . . . . . . . . 4

*United States v. Dalm*, 494 U.S. 596 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

*Weiner v. United States*, 389 F.3d 152 (5th Cir. 2004), *cert. denied*, 544 U.S. 1050 (2005) . . . . . 17

*Winstar Corp. v. United States*, 64 F.3d 1531 (Fed. Cir. 1995), *aff'd*, 518 U.S. 839 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

**Statutes:**

Internal Revenue Code of 1986 (26 U.S.C.)

§ 165 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 15

§ 705 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 5, 7

§ 722 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**Statutes (Continuation):**

**Page**

§ 752 . . . . . . . . 7

§ 6110 . . . . . . . . 8

§ 6221 . . . . . . . . 17

§ 6225 . . . . . . . . 11

§ 6228 . . . . . . . . 17

§ 6230 . . . . . . . . 6, 17

§ 6231 . . . . . . . . 13, 17

§ 6511 . . . . . . . . 5, 6, 7

§ 7422 . . . . . . . . 3, 5, 13, 16

**Miscellaneous:**

Fed. R. Evid. 201(b) . . . . . . . . 18

*Restatement (Second) of Contracts* § 204 (1981) . . . . . . . . 12

Temporary Treasury Regulation (26 C.F.R.) (1997):

§ 301.6224(c)-3T(b) . . . . . . . . 10

Treasury Regulations (26 C.F.R.):

§ 301.6402-2 . . . . . . . . 4, 5

United States Court of Federal Claims Rules:

R. 12 . . . . . . . . 16, 17, 18, 19,20

R. 56 . . . . . . . . 19

5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1366 at 186 & n.34 (3d ed. 2004) . . . . . . . . 18

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 04-1743 T
(Judge Susan G. Braden)

WILLIAM H. SCHELL and RUBY G. SCHELL,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

REPLY BRIEF FOR THE UNITED STATES IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT

INTRODUCTION

In this suit for a refund of federal income taxes paid for the years 1993 and 1995, plaintiffs claim deductions under § 165 of the Internal Revenue Code[1] resulting from plaintiff William H. Schell's ("Schell's") investments in two partnerships, Canyon Desert Vineyards ("CDV" or the "partnership") and Vista Ag-Realty ("VAR" or the "partnership"). Defendant moved to dismiss the complaint for lack of jurisdiction, and, in the alternative, for failure to state a claim upon which relief can be granted. Plaintiffs filed a brief in opposition to defendant's motion. As discussed below, plaintiffs' arguments lack merit.[2]

---

[1]Unless otherwise noted, the section symbol ("§") or the word "section" shall refer to the Internal Revenue Code of 1986, codified in Title 26 of the United States Code, as amended and in effect during the relevant period. Pertinent portions of authorities cited in this brief but not in defendant's opening brief are set forth in Appendix A, *infra*.

[2]Plaintiffs offer no argument in opposition to defendant's contention that plaintiffs are not entitled to a refund for 1993 because a distribution reported by CDV for that year precludes
(continued...)

ARGUMENT

I. Plaintiffs' Loss Claims Are Not Based on a Legally Valid Method of Computing the Basis of Schell's Partnership Interests

In its opening brief, defendant contended that the settlement agreements Schell and his then-wife Margaret Schell entered into with the IRS for 1985 and 1986 did not increase the basis of Schell's partnership interest in CDV or VAR, and they therefore did not sustain losses on their interests when the partnerships terminated. (Mot. to Dismiss (hereinafter "Def.'s Br.") at 24-30.) We offered two reasons. First, such a result would eviscerate the settlement agreements by allowing plaintiffs to deduct in 1993 and 1995, respectively, (as a loss upon the termination of each partnership interest,) the same amount that Schell agreed could not be deducted in 1985 and 1986, respectively, (as Schell's share of partnership loss). *Cf. Fickling v. United States*, 507 F.3d 1302, 1305-06 (11th Cir. 2007). Second, the rules for computing the basis of a partnership interest prevent the settlement-nullifying result plaintiffs advocate, as there was no change in basis when losses were disallowed. Partnership basis rules reduce the basis of a partnership interest both by a partner's share of partnership loss and by a partner's share of the nondeductible expenditures of a partnership. § 705(a)(2)(A), (B). The only effect that the settlement agreements could have had on the computation of the basis of Schell's partnership interests would have been to convert the disallowed portion of the originally claimed partnership losses into nondeductible expenditures of the partnerships. Overall basis would be unchanged. That is, basis would be increased by the disallowed losses and decreased by the same amount of nondeductible expenditures. Contrary to

---

[2](...continued)
ordinary loss treatment for the termination of Schell's partnership interest in that partnership. For the reasons explained in Part III of defendant's opening brief, the Court should therefore dismiss the first count of the complaint.

the Schells' claim, there was no overall increase in basis, and their loss claim in the partnership termination years is unfounded.

In response, plaintiffs argue that defendant misunderstands plaintiffs' method of computing the basis of each of Schell's partnership interests. (Pls.' Resp. to Mot. to Dismiss (hereinafter "Pls.' Br." at 16-17.) They assert that the increased basis they claim results, not from the disallowed partnership losses, but rather from income reported by the respective partnership after its initial year. (*Id.*) As explained below, however, the basis computation that plaintiffs now advocate is substantially different than the one on which they originally based their claims, and the Court lacks jurisdiction over such revised claims. Even if the Court could consider plaintiffs' new theory, it would fail, because it overlooks that the basis of each partnership interest would also have to decrease on account of a decrease in Schell's share of partnership liabilities after each partnership's initial year.

A. The Court Lacks Jurisdiction over Plaintiffs' New Theory for Computing the Basis of Schell's Partnership Interests, Because It Constitutes a Substantial Variance from the Refund Claims Plaintiffs Submitted to the IRS

First, by asserting now that the basis of each of Schell's partnership interests is attributable to income reported by the respective partnership after its initial year, rather than the disallowed losses from the initial year, plaintiffs have stated claims that depend on a different legal theory and a different set of facts than the claims they presented to the IRS. As such, this Court lacks jurisdiction over their claims under the substantial variance doctrine.

The substantial variance doctrine stems from § 7422(a), which requires a refund claim to be "duly filed" with the IRS before maintaining a lawsuit for a tax refund. § 7422(a). To be "duly filed," the claim filed with the IRS must "set forth in detail each ground upon which a . . . refund is claimed and facts sufficient to apprise the Commissioner [of Internal Revenue] of the exact basis

thereof." Treas. Reg. § 301.6402-2(b)(1). Together, the statute and regulation preclude a taxpayer from substantially varying in a refund suit the legal or factual bases of its arguments from those raised in the refund claim presented to the IRS. *Ottawa Silica Co. v. United States*, 699 F.2d 1124, 1138 (Fed. Cir. 1983); *Cook v. United States*, 220 Ct. Cl. 76, 599 F.2d 400, 406 (1979); *Union Pacific R.R. v. United States*, 182 Ct. Cl. 103, 389 F.2d 437, 442-45 (1968). The "substantial variance" rule thus ensures that the IRS receives adequate notice of the basis for a refund claim to permit an administrative investigation and determination, and limits the scope of any ensuing litigation to the issues that the IRS determines it is willing to defend. *Ottawa Silica Co.*, 699 F.2d at 1138 (citing *Union Pacific R.R.*, 389 F.2d at 442). The substantial variance rule is jurisdictional in nature. *Id.* at 1139; *cf. United States v. Dalm*, 494 U.S. 596, 602 (1990).

Here, the refund claims plaintiffs submitted to the IRS stated that plaintiffs sought a refund based on a computation of the basis of Schell's partnership interest "as a direct consequence of the settlement." Compl. (Def. Ex. 21, App. B to Def.'s Br. at B-171, B-186). The settlement agreements made no adjustments to post-1985/1986 income. Further, the basis recomputation that plaintiffs included in each claim showed the basis of the respective partnership interest increasing by the amount of partnership loss reported in the partnership's initial year that was disallowed under the settlement. *Id.* Neither claim referred to Schell's share of partnership income recognized in later years or the rule that provides for increases to the basis of a partnership by the amount of a partner's distributable share of partnership income (§ 705(a)(1)(A)).

Defendant has not misunderstood plaintiffs' argument. Rather, in response to defendant's opening brief, showing that argument fails, plaintiffs now are attempting to raise a new argument based on different facts – *e.g.*, the amount of income reported by each partnership after its initial year – and raising different legal questions – *e.g.*, the implications of the settlement agreement for

partnership income reported in later years – than the claims presented to the IRS. By failing to include this new argument in their refund claims, plaintiffs denied the IRS the opportunity to investigate and make a determination with respect to the underlying facts – *e.g.*, by reviewing and retaining the partnership tax returns for the later years – and the underlying law – *e.g.*, by analyzing and determining whether legal precedent supports plaintiffs' new claims. Plaintiffs' new argument thus violates the substantial variance doctrine and is jurisdictionally barred.

B. The Court Lacks Jurisdiction over Plaintiffs' New Theory as Applied to Schell's Partnership Interest in CDV, Because Plaintiffs' Refund Claim Was Untimely Under the New Theory

Under plaintiffs' new basis-computation theory, the Court lacks jurisdiction over their claim for the loss of Schell's partnership interest in CDV for another reason: As originally framed, plaintiffs' claim triggered the special period of limitations for claims attributable to TEFRA settlements, and their refund claim was timely under that provision. Under plaintiffs' new basis-computation theory, their claim is no longer attributable to the settlement, and plaintiffs were therefore required to file their claim with the IRS within the general period of limitations provided by the Code. Plaintiffs failed to file their refund claim within that period, however, and the Court therefore lacks jurisdiction over their claim for a refund for 1993.

As explained above, before filing a refund suit, a taxpayer must "duly file" a refund claim with the IRS. § 7422(a). To be "duly filed," the claim must be filed within the applicable period of limitations. Treas. Reg. § 301.6402-2(a)(1). The requirement of filing a timely refund claim is a jurisdictional prerequisite to maintaining a refund suit. *Dalm*, 494 U.S. at 602. For most refund claims, the applicable period of limitation is provided by § 6511(a), which requires the claim to be filed within three years from the time the return was filed or two years from the time the tax was paid, whichever is later. § 6511(a). TEFRA provides an alternative period of limitations, however,

for claims that the IRS failed to allow a credit or to make a refund to a partner in the amount of the overpayment attributable to the application to the partner of a settlement, a final partnership administrative adjustment, or the decision of a court in a TEFRA proceeding. § 6230(c)(1)(B), (c)(2)(B). Under that provision, a claim attributable to a settlement must be filed within two years of the day on which the settlement is entered into. § 6230(c)(2)(B)(i).

Here, plaintiffs filed their refund claim for 1993, claiming a deduction for the termination of Schell's partnership interest in CDV, on April 26, 1999. Def. Ex. 18, App. B to Def.'s Br. at B-158. In their refund claim, plaintiffs argued that the losses that were disallowed under the 1985 settlement agreement increased the basis of Schell's partnership interest in CDV. Compl. (Def. Ex. 21, App. B to Def.'s Br. at B-171). Their claim was thus attributable to the application to Schell of the settlement and triggered the alternative period of limitations that TEFRA provides for such claims. Since the settlement was entered on April 28, 1997 (Def. Ex. 6, App. B to Def.'s Br. at B-65), the refund claim, filed less than two years later, was timely.

Plaintiffs now seek to compute the basis of Schell's partnership interest based on income allegedly reported by CDV after 1985. The settlement agreement made no adjustments to CDV's post-1985 income, however. Thus, under their new basis-computation theory, plaintiffs' claim is no longer attributable to the settlement agreement and fails to trigger TEFRA's special period of limitations. Plaintiffs were thus required to file their refund claim within the § 6511(a) period of limitations – that is, within three years of the date they filed their original 1993 return or within two years of the date they paid their tax for 1993. Plaintiffs filed their original income tax return for 1993 on April 15, 1994, and made their last payment toward their 1993 tax liability on June 3, 1996. Def. Ex. 17, App. B to Def.'s Br. at B-154. Their refund claim, filed on April 26, 1999, was filed more than three years after plaintiffs filed their original return and more than two years after they

paid their 1993 tax and thus was untimely under § 6511(a). The Court therefore lacks jurisdiction over plaintiffs' claim for 1993.

### C. Plaintiffs' New Theory Fails, Because Any Increase in the Basis of Each of Schell's Partnership Interests Attributable to Income Reported by the Respective Partnership After Its Initial Year Would Be Offset by the Decrease in Basis Required by the Simultaneous Reduction in Schell's Share of Partnership Liabilities

Even if plaintiffs were permitted to proceed under their new theory, their claims would fail because, like their original theory, the new theory invokes one basis adjustment rule to the exclusion of another. Plaintiffs' new theory depends on the rule that the basis of a partnership interest increases by a partner's share of the income of the partnership. *See* § 705(a)(1)(A), (B). But the basis of a partnership interest also decreases as a partner's share of partnership liabilities decreases. §§ 705(a)(2), 752(b). Plaintiffs claim that, after each partnership's initial year, plaintiffs recognized a positive share of partnership income, but plaintiffs' share of each partnership's liabilities decreased. When both basis adjustment rules are applied, the basis of each partnership interest at the time that the respective partnership allegedly terminated was zero.

A partner's share of partnership liabilities affects the basis of his partnership interest by virtue of its deemed relationship to partnership contributions and distributions: An increase in a partner's share of partnership liabilities is deemed to constitute a contribution by that partner to the partnership, while a decrease in a partner's share of partnership liabilities is deemed to constitute a distribution by the partnership to that partner. § 752(a), (b). In general, a partner's contributions to a partnership increase the basis of his partnership interest, while distributions from the partnership to a partner decrease the basis of that partner's partnership interest. §§ 722, 705(a). Thus, a partner's basis in his partnership interest increases as his share of partnership liabilities increases, and decreases as his share of partnership liabilities decreases.

Here, decreases in Schell's share of each partnership's liabilities after the partnership's initial year reduced the basis of his partnership interest by an amount that offsets the increase to basis that plaintiffs claim on account of partnership income. At the end of 1985, Schell's share of CDV's partnership liabilities was $62,525. Def. Ex. 3, App. B to Def.'s Br. at B-38. By the end of 1993, Schell's share of such liabilities was zero. Compl. (Def. Ex. 21, App. B to Def.'s Br. at B-172). Thus, between 1985 and 1993, Schell's share of CDV's partnership liabilities decreased by $62,525. Per plaintiffs' new theory, Schell's share of the post-1985 partnership income of CDV increased the basis of his CDV partnership interest by $33,409. (Pls.' Br. at 16.) Even if that were true, the simultaneous decrease of $62,525 in his share of partnership liabilities would have reduced the basis of his partnership interest to zero by the time of the alleged termination of CDV.

Similarly, at the end of 1986, Schell's share of VAR's partnership liabilities was $35,000. Def. Ex. 11, App. B to Def.'s Br. at B-115. By the end of 1995, his share of such liabilities had decreased to zero. Compl. (Def. Ex. 21, App. B to Def.'s Br. at B-205). Thus, even if the post-1986 partnership income increased the basis of Schell's VAR partnership interest by the $25,687 alleged in the complaint, the $35,000 decrease in partnership liabilities after 1986 would have eliminated the entire basis of Schell's partnership interest by the time of the alleged termination of VAR.[3]

---

[3]In addition to raising their new basis-computation theory, plaintiffs defend their original theory by asserting that it was formerly endorsed by the IRS. (Pls.' Br. at 13-14.) Their argument lacks merit. First, it is well-established that the IRS may change an earlier interpretation of the law, even if such a change is made retroactive in effect. *Dickman v. Comm'r*, 465 U.S. 330, 343 (1984). Second, the types of materials cited by plaintiffs lack precedential value. *See* § 6110(b)(1), (k)(3); *Caterpillar Tractor Co. v. United States*, 218 Ct. Cl. 517, 589 F.2d 1040, 1043 (1978); *Atchinson, Topeka & Santa Fe Ry. Co. v. United States*, 61 Fed. Cl. 84, 90 (2004).

II. The Court Lacks Jurisdiction over Plaintiffs' Claims, Because They Depend on Determinations that TEFRA Bars this Court from Making: That the Partnerships' Transactions Were Not Shams and Were Entered into with a Profit Objective

In its opening brief (Def.'s Br. at 13-24), defendant explained that plaintiffs' claims depend on determinations that both partnerships' transactions were not shams and were entered into with a profit motive. Because the nature of each partnership's transactions constitutes a partnership item under TEFRA and was at issue in a partnership-level TEFRA proceeding to which plaintiffs were parties, this Court lacks jurisdiction to determine it. The jurisdictional framework established by TEFRA required plaintiffs to have obtained a determination that the partnership transactions were bona fide and were entered into for profit before filing the instant partner-level refund suit. *See Prati v. United States*, ___ Fed. Cl. ___ (2008), 2008 WL 1777380 at *18; *Keener v. United States*, 76 Fed. Cl. 455, 461, 469-70 (2007), *appeal docketed*, No. 08-5004 (Fed. Cir. Oct. 19, 2007). Because plaintiffs did not do so, this Court lacks jurisdiction over their claim.

In response, plaintiffs concede that transactions that lack economic substance are not recognized for tax purposes. (Pls.' Br. at 15.) They argue, however, that only a portion of the first year's transactions of each partnership were found to lack economic substance and that the deductibility of the loss they claim therefore should depend only on whether Schell invested in the partnership with a subjective profit motive. (*Id.* at 17.) Plaintiffs overlook, however, that the FPAA issued to each partnership for its initial year determined that *all* of the partnership transactions underlying the reported losses were shams lacking in economic substance. Def. Ex. 5, App. B to Def.'s Br. at B-61; Def. Ex. 13, App. B to Def.'s Br. at B-133. For this Court to have jurisdiction over their claim, plaintiffs must therefore point to a subsequent partnership-level determination that overturned the FPAA's determination. In an attempt to do so, plaintiffs point to the settlement

agreements. (Pls.' Br. at 11.) As explained below, however, the settlement agreements included no such determination.

Plaintiffs also attempt to satisfy the jurisdictional prerequisite to this suit by construing the record of each partnership's activities after its initial year to contain a determination that the partnership's transactions were bona fide and entered into for profit. (Pls.' Br. at 16-17.) The attempt fails, however, because plaintiffs' claim depends on the nature of the transactions underlying the losses reported on each partnership's return for its initial year, and nothing in the partnership-level record for later years overturned the FPAA's determination that those transactions were shams lacking in economic substance.

A. The Final Partnership-Level Records for 1985 and 1986 Do Not Contain a Determination that the Partnership Transactions Were Bona Fide and Entered into for Profit

Plaintiffs first attempt to satisfy the jurisdictional prerequisite to this suit – partnership-level determinations that CDV's and VAR's transactions were not shams and were entered into for profit – by pointing to the settlement agreements. Plaintiffs argue that the settlement agreements comprehensively settled all partnership items. They base that argument on the mistaken notion that the law required the agreements to be comprehensive and indications that, after the agreements were signed, the parties treated them as being comprehensive.[4] But, while plaintiffs do not dispute that

---

[4]The requirement in former temporary regulation Treas. Reg. § 301.6224(c)-3T(b) that "settlements shall be comprehensive" did not require every TEFRA settlement to be comprehensive. It required, rather, that a consistent settlement agreement include all of the terms in the original settlement. *See Keener*, 76 Fed. Cl. at 465. Similarly, *Greenberg Bros. Partnership #4 v. Commissioner* stands merely for the proposition that the IRS is not required to offer other partners a consistent settlement if the original settlement is not comprehensive. *See Greenberg Bros. P'ship #4 v. Comm'r*, 111 T.C. 198, 206 (1998). It does not stand for the reverse proposition (for which plaintiffs cite it) that, if the IRS offers a consistent settlement, the original settlement was, as a matter of law, comprehensive.

Plaintiffs similarly err by interpreting the fact that the IRS assessed additional tax and interest (continued...)

the nature of partnership transactions constitutes a partnership item, they fail to point to a term in the allegedly "comprehensive" settlement agreements that determined that the partnership transactions were bona fide and were entered into for profit. Rather, plaintiffs suggest that such a determination is implicit in each of the agreements since the agreement allowed half of the first-year deductions. The rules of contract interpretation do not permit the Court to read such a term into the agreements. Furthermore, even under plaintiffs' erroneous interpretation of the agreements, they lack a determination that the transactions on which plaintiffs' present claims are based – *i.e.*, those giving rise to the *disallowed* partnership losses – were bona fide and entered into for profit. Without such a determination in the settlement agreements, plaintiffs have failed to demonstrate that the FPAAs' determinations that CDV's and VAR's transactions lacked economic substance were overturned at the partnership level. Since plaintiffs are barred from seeking such a determination in this partner-level suit, the Court should dismiss the complaint for lack of jurisdiction.

A settlement agreement is a contract and is therefore interpreted according to general principles of contract construction. *Buesing v. United States*, 47 Fed. Cl. 621, 630 (2000); *Slovacek v. United States*, 36 Fed. Cl. 250, 256 (1996). A primary objective in contract construction is to discern the parties' intent at the time the contract was executed. *Winstar Corp. v. United States*, 64 F.3d 1531, 1540 (Fed. Cir. 1995) (en banc), *aff'd*, 518 U.S. 839 (1996). Where the language of a contract is unambiguous, its meaning must be determined without resort to extrinsic evidence. *Estate of*

[4](...continued)
against them for 1985 and 1986 before the Tax Court decisions were entered as evidence that the IRS considered the settlements to be comprehensive. (Pls.' Br. at 10.) Section 6225(a) prohibits the assessment of a deficiency attributable to a partnership item before the 150th day after an FPAA is issued and, if a partnership proceeding to challenge the FPAA is initiated in the Tax Court, before the Tax Court's decision becomes final. § 6225(a). Here, however, Schell specifically waived the restriction on assessment provided by § 6225(a) as part of the settlement agreements. Def. Ex. 6, App. B to Def.'s Br. at B-65; Def. Ex. 14, App. B to Def.'s Br. at B-135.

*Kokernot v. Comm'r*, 112 F.3d 1290, 1294 (5th Cir. 1997); *Goldman v. Comm'r*, 39 F.3d 402, 406 (2d Cir. 1994); *Buesing*, 47 Fed. Cl. at 630. Similarly, although a court may supply a term that is missing from a contract if it is essential to the determination of the parties' rights and duties under the contract, if a contract contains no obvious void, then the court must limit its interpretation to the four corners of the contract. *First Nationwide Bank v. United States*, 48 Fed. Cl. 248, 263 (2000), *aff'd*, 431 F.3d 1342 (2005); *Last v. United States*, 37 Fed. Cl. 1, 7 (1996); *see Restatement (Second) of Contracts* § 204 (1981).

The settlement agreements at issue here are unambiguous and, within their four corners, contain no determination that CDV's or VAR's transactions were bona fide and entered into for profit. Def. Ex. 6, App. B to Def.'s Br. at B-65 - B-66; Def. Ex. 14, App. B to Def.'s Br. at B-135 - B-136. Nor is such a term essential to the determination of the rights or duties of the parties under the settlements, since its omission did not affect the implementation of the parties' agreement that plaintiffs would be allowed to deduct half of the partnership losses claimed in 1985 and 1986. Thus, there is no basis for the Court to supply such a term to the agreement. *See First Nationwide Bank*, 48 Fed. Cl. at 263; *Last*, 37 Fed. Cl. at 7.

Apart from those well-established principles of contract interpretation, common sense also belies plaintiffs' interpretation of the settlement agreements. Parties in litigation regularly settle some, but not all, of the items that are at issue in a lawsuit. Or, they may settle on an amount, but not the grounds underlying the suit.[5] Plaintiffs here might have decided to settle the amount of partnership losses to ensure that they would be allowed to deduct at least part of the losses they claimed in 1985 and 1986, while being unwilling to concede the sham-transaction issue, hoping to eventually prevail on that issue and thus avoid the imposition of tax-motivated interest. Similarly,

[5]It is commonplace for companies to settle antitrust, class action, consumer fraud, environmental, medical malpractice, and many other kinds of claims by agreeing to pay money, take action, or refrain from certain conduct, "without admitting fault."

the IRS might have been willing to allow part of the deductions claimed by CDV and VAR to reduce its litigation costs, while not being willing to concede that the partnerships' transactions were not shams. *See Nault v. United States*, 517 F.3d 2, 8 (1st Cir. 2008) ("The fact that the IRS chose to settle rather than risk the hazards of litigation is no more a concession that the transactions at hand possessed economic substance than a defendant's decision to settle a dubious lawsuit for pennies on the dollar is a concession that the suit had merit."). In the final analysis, the settlement agreements themselves prove that the parties did not settle the sham-transaction issue, and it would violate general principles of contract interpretation to write such a term into the agreements.

Because the settlement agreements did not settle the sham-transaction issue, they do not fulfill the jurisdictional prerequisite to this suit. For the same reason, they do not enable plaintiffs to bypass the jurisdictional prerequisite. Plaintiffs suggest that the settlement agreements converted the sham-transaction issue into a nonpartnership item immune from the jurisdictional bar of § 7422(h). (Pls.' Br. at 14). The provision on which plaintiffs rely – § 6231(b)(1)(C) – however, converts into nonpartnership items only those partnership items that are specifically settled in an agreement. § 6231(b)(1)(C) ("[T]he partnership items of a partner for a partnership taxable year shall become nonpartnership items as of the date the Secretary [of the Treasury] . . . enters into a settlement agreement with the partner with respect to *such items*." (emphasis added)). Because the settlement agreements here did not settle the sham-transaction issue, that issue did not convert into a nonpartnership item. *See Keener*, 76 Fed. Cl. at 464-65.

Even if the Court were to accept plaintiffs' strained and erroneous interpretation of the settlement agreements to include a government concession that the partnerships' transactions were not shams, plaintiffs would still have failed to point to a partnership-level determination that the transactions on which their claims are based were bona fide and entered into for profit. Plaintiffs'

interpretation of the settlements is consistent with an understanding that some of each partnership's transactions were bona fide, while others were not, and thus that the losses generated by the former category of transactions were allowable, while the losses generated by the latter category of transactions were not allowable. Since the basis that plaintiffs claim in each of Schell's partnership interests is based on the disallowed losses, their claim depends on the nature of the latter category of transactions. Plaintiffs offer no reason why the settlements should be read to imply a determination that those transactions were bona fide and entered into for profit.

B. The Post-1985 and Post-1986 Partnership Records Lack a Determination that the 1985 and 1986 Partnership Transactions Were Bona Fide and Entered into for Profit

Since there is no determination in the partnership-level record for 1985 or 1986 that the partnership transactions were bona fide and entered into for profit, plaintiffs now seek to refer to activities allegedly conducted by each partnership after its initial year. (Pls.' Br. at 15-16.) The deductions plaintiffs claim depend on the nature of the *first-year* partnership transactions, however, and plaintiffs have failed to show that the partnership record for later years contains a determination that the first year transactions were bona fide or entered into for profit.

First, the refund plaintiffs claim for 1993 and 1995, respectively, depends on the nature of the transactions underlying the losses reported by CDV in 1985, and by VAR in 1986, respectively. Plaintiffs seek to derive the basis of each of Schell's partnership interests from the portion of the losses that were disallowed in each partnership's initial year.[6] But, by increasing the basis of each of Schell's partnership interests by the disallowed losses and then claiming that basis as a deduction in the year the partnership allegedly terminated, plaintiffs are claiming deductions that were generated

[6]Plaintiffs also now offer a new, alternative theory for their claims, under which the basis of each of Schell's partnership interests derives from income allegedly reported by the respective partnership after its initial year. (Pls.' Br. at 16-17.) As explained above, however, the Court lacks jurisdiction over plaintiffs' claims, and plaintiffs misapply the basis-computation rules.

by the first-year partnership transactions. Thus, their claim depends on whether those transactions – *i.e.*, the very transactions that the FPAAs determined constitute shams lacking economic substance – were bona fide and were entered into for profit. *See Nault*, 517 F.3d at 8 (rejecting another AMCOR partner's basis-restoration claim because "the plain language of the Tax Court decisions indicates that the disallowed loss deductions were based on transactions that lacked economic substance"); *see also Marinovich v. Comm'r*, 77 T.C.M. (CCH) 2075 (1999), 1999 WL 339316, at *1-*2 (May 28, 1999) (relying on the Tax Court's prior finding that the transactions underlying deductions that a partnership had claimed in earlier years lacked economic substance as a basis for disallowing a partner's subsequent claim for a § 165 deduction).

Plaintiffs have not pointed to anything in the post-1985 or post-1986 partnership record that overturned the FPAA's determination that those transactions were shams. The only allegations plaintiffs make with respect to the post-1985 and post-1986 partnership record are that the partnerships reported income and deductions and that the IRS did not adjust those items. But unadjusted items of income and deductions reported in later years do not constitute a finding that the transactions underlying the partnership losses reported in 1985 and 1986 were bona fide and entered into for profit.

Thus, plaintiffs have failed to show that the post-1985 or post-1986 partnership record provides the jurisdictional prerequisite to this suit – *i.e.*, a partnership-level determination that the first-year partnership transactions were not shams and were entered into for profit.

## III. The Materials Cited in Defendant's Motion to Dismiss Do Not Require the Court to Convert It into a Motion for Summary Judgment, but Even If They Did, the Court Should Grant the Motion

Plaintiffs also argue that, because defendant's opening brief cites materials outside the pleading, the Court should treat the motion to dismiss as a motion for summary judgment. (Pls.' Br.

at 2-3.) As explained below, the cited materials do not require the Court to treat either the Rule 12(b)(1) motion or the Rule 12(b)(6) motion as one for summary judgment. Moreover, even if the Court were to convert the Rule 12(b)(6) motion to dismiss into a motion for summary judgment, plaintiffs have failed to demonstrate that further discovery would enable them to withstand a motion for summary judgment. Relatedly, plaintiffs have failed to demonstrate how further jurisdictional discovery would assist them in establishing that the Court has subject matter jurisdiction over their claim.

A. The Court Can Consider the Materials Cited by Defendant without Converting Defendant's Motion to Dismiss under Rule 12(b)(1) into a Motion for Summary Judgment, Because the Motion Addresses the Court's Jurisdiction, Not the Merits of Plaintiffs' Claims

A court can look to evidence outside the pleadings to determine whether it possesses subject matter jurisdiction over the complaint. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed. Cir. 1988). Defendant is contending under Rule 12(b)(1) that TEFRA deprives the Court of jurisdiction to award plaintiffs' the relief they seek. Plaintiffs nevertheless argue that the Court should treat defendant's Rule 12(b)(1) motion as a motion for summary judgment, because it is intertwined with the merits of their claims. Plaintiffs assert that defendant's argument is properly denominated as "a motion for summary judgment on the merits coupled with a motion *in limine* restricting the introduction of evidence." (Pls.' Br. at 2.) To be sure, a court must look beyond the denomination of a motion as "jurisdictional" to determine whether the consideration of materials outside the pleadings will convert the motion into one for summary judgment. *See Thoen v. United States*, 765 F.2d 1110, 1114 (Fed. Cir. 1985). In this case, though, defendant has accurately characterized the nature of its motion as "jurisdictional," and consideration of the cited materials does not convert it into a motion for summary judgment.

To begin, defendant's contention under Rule 12(b)(1) relies on statutory provisions that are explicitly jurisdictional. *E.g.*, § 7422(h) ("*No action may be brought* for a refund attributable to

partnership items (as defined in section 6231(a)(3)) except as provided in section 6228(b) or section 6230(c).") (emphasis added); § 6230(c)(4) ("For purposes of any claim or suit under this subsection, the treatment of partnership items on the partnership return, under the settlement, under the final partnership administrative adjustment, or under the decision of the court (whichever is appropriate) shall be conclusive."); § 6221("Except as otherwise provided in this subchapter, the tax treatment of any partnership item (and the applicability of any penalty, addition to tax, or additional amount which relates to an adjustment to a partnership item) shall be determined at the partnership level."). Consistent with the nature of those provisions, this and other courts have treated similar contentions based on TEFRA as jurisdictional. *See, e.g.*, *Prati*, ___ Fed. Cl. at ___, 2008 WL 1777380 at *18; *Keener*, 76 Fed. Cl. at 459, 470; *Weiner v. United States*, 389 F.3d 152, 157 (5th Cir. 2004), *cert. denied*, 544 U.S. 1050 (2005); *Kaplan v. United States*, 133 F.3d 469, 473-74 (7th Cir. 1998).

Further, plaintiffs mischaracterize defendant's motion by comparing it to a motion *in limine*. Defendant does not contend that the Court should prohibit plaintiffs from introducing certain evidence. Defendant contends, rather, that a jurisdictional prerequisite to the granting of plaintiffs' claims – a partnership-level determination that the transactions underlying plaintiffs' claims were bona fide and entered into for profit – has not been fulfilled. In that sense, defendant's motion is analogous to a motion to dismiss for failure to file a timely refund claim – a motion that is plainly jurisdictional and treated as properly filed under Rule 12(b)(1). *See, e.g.*, *Minehan v. United States*, 75 Fed. Cl. 249, 253-54 (2007); *Buttke v. United States*, 13 Cl. Ct. 191, 193 (1987).

B. The Court Need Not Treat Defendant's Motion Under Rule 12(b)(6) as a Motion for Summary Judgment, Because It Depends Only on the Allegations in the Complaint, Indisputable Matters Integral to the Complaint, and Matters of Public Record

Although Rule 12(b)(6) imposes a tighter restriction on the materials that may be considered in resolving a motion to dismiss than does Rule 12(b)(1), Rule 12(b)(6) still does not require the

Court to treat defendant's motion as one for summary judgment. Defendant's motion in reliance on Rule 12(b)(6) depends primarily on allegations contained in the complaint. The only additional materials that support defendant's Rule 12(b)(6) motion do not require its conversion to a summary judgment motion, because the materials are either integral to the complaint and indisputably authentic, or matters of public record.

Rule 12(b) provides that, if "matters outside the pleading are presented to and not excluded by the court, the [Rule 12(b)(6)] motion shall be treated as one for summary judgment." RCFC 12(b). Nevertheless, for purposes of Rule 12, items of unquestioned authenticity that are referred to in the pleading and are central or integral to the pleader's claim for relief are not considered to be "matters outside the pleading." 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1366 at 186 & n.34 (3d ed. 2004).[7] Similarly, matters of the public record, of which a court can take judicial notice, do not convert a Rule 12(b)(6) motion into a motion for summary judgment. Wright & Miller, *supra*, § 1366 at 185 & n.33; *see* Fed. R. Evid. 201(b).[8]

At bottom, defendant's support for its motion to dismiss for failure to state a claim depends on the theory of plaintiffs' claims as set forth in the complaint: that the basis of each of Schell's partnership interests increased by his distributable share of the partnership losses disallowed in 1985

---

[7] *See, e.g.*, *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384-85 (10th Cir. 1997) (holding that the consideration of a bid letter does not convert a motion to dismiss a contract claim into a motion for summary judgment); *Stone v. Writer's Guild of America West, Inc.*, 101 F.3d 1312, 1313-14 (9th Cir. 1996) (holding that the consideration of a collective bargaining agreement does not convert a motion to dismiss a claim by a union member against a union into a motion for summary judgment); *Iosa v. Gentiva Health Servs., Inc.*, 299 F. Supp. 2d 29, 37 (D. Conn. 2004) (holding that the consideration of an allegedly defamatory memorandum does not convert a motion to dismiss a defamation claim into a motion for summary judgment).

[8] *See, e.g.*, *Levy v. Ohl*, 477 F.3d 988, 991-92 (8th Cir. 2007) (considering court records from prior litigation without converting a Rule 12(b)(6) motion to dismiss a malicious prosecution claim into a motion for summary judgment); *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773-74 (2d Cir. 1991) (considering documents on file with the SEC without converting a Rule 12(b)(6) motion to dismiss a securities action into a motion for summary judgment).

or 1986. Compl. ¶ 9.C-D, 17.C-D. Although not critical to defendant's argument, other materials defendant has cited provide context to plaintiffs' allegations and may be considered as further support for the motion without converting it to one for summary judgment. Materials such as the Tax Court petitions, for example, fall within the exception for matters of public record. Other materials, such as the settlement agreement between Schell and the IRS for the 1985 tax year of CDV and Schell's Schedule K-1 for each partnership's initial year may be considered, because they are integral to the allegations in the complaint and, since they are consistent with those allegations, raise no authenticity concerns.[9]

C. The Discovery Proposed by Plaintiffs Would Not Save their Claims from Failing as a Matter of Law or for Lack of Subject Matter Jurisdiction

Even if the Court were to convert defendant's Rule 12(b)(6) motion to dismiss into a motion for summary judgment, the Court could resolve the motion now, because the further discovery plaintiffs propose would not enable them to withstand a motion for summary judgment. *See Simmons Oil Corp. v. Tesoro Petroleum Corp.*, 86 F.3d 1138, 1144 (Fed. Cir. 1996) (upholding the district court's denial of a motion for a Rule 56(f) continuance where the proposed discovery was irrelevant to the issues raised in the summary judgment motion). Similarly, plaintiffs have not shown that their proposed discovery would assist them in establishing that the Court has subject matter jurisdiction over their claims.

With respect to defendant's Rule 12(b)(6) motion, plaintiffs assert that further discovery would allow them to show that the basis of each of Schell's partnership interests results from

[9]In any event, defendant's motion may be granted without resort to these additional, contextual materials. A court is not required to treat a Rule 12(b)(6) motion as a motion for summary judgment if materials beyond the pleadings are not considered. *Casazza v. Kiser*, 313 F.3d 414, 417-418 (8thCir. 2002); *Jackson v. S. Cal. Gas Co.*, 881 F.2d 638, 642 n.4 (9th Cir. 1989); *Gallo v. United States*, 76 Fed. Cl. 593, 598 n.4 (2007).

income reported by the respective partnership after its initial year. (Decl. of T. Womack, App. B to Pls.' Br. at 64-65.) As explained in Section I.A, *supra*, however, plaintiffs are barred from relying on such a basis-computation theory under the substantial variance doctrine. Further, as explained in Section I.C, *supra*, the increase in the basis of Schell's partnership interests that plaintiffs now allege to be attributable to post-1985 and post-1986 income is negated by the decrease in basis required by the reduction in Schell's share of partnership liabilities after 1985 and 1986. Thus, plaintiffs' claims would fail as a matter of law even if plaintiffs were permitted additional discovery to prove that they recognized positive amounts of partnership income after 1985 and 1986.

With respect to defendant's Rule 12(b)(1) motion, plaintiffs assert that further discovery would enable them to show that each partnership carried on a long-term crop-growing program after its initial year. (Decl. of T. Womack, App. B to Pls.' Br. at 65.) As explained in Section II.B, *supra*, however, plaintiffs' claims depend on the nature of the transactions that generated the first-year partnership losses, and plaintiffs have not asserted that the partnership record from later years overturned the FPAAs' determinations that those transactions were shams lacking economic substance.

Thus, plaintiffs have failed to demonstrate a likelihood that further discovery would assist them in establishing that the Court has subject matter jurisdiction over their claims or save their claims from failing as a matter of law.

## CONCLUSION

WHEREFORE, defendant respectfully requests that the Court grant its Motion to Dismiss the Complaint.

Respectfully submitted,

s/Karen Servidea

KAREN SERVIDEA
*Attorney of Record*
*U.S. Department of Justice*
*Tax Division*
*Court of Federal Claims Section*
*Post Office Box 26*
*Ben Franklin Post Office*
*Washington, D.C. 20044*
(202) 307-6496
(202) 514-9440 (fax)

NATHAN J. HOCHMAN
*Assistant Attorney General*
DAVID GUSTAFSON
*Chief, Court of Federal Claims Section*
STEVEN I. FRAHM
*Assistant Chief, Court of Federal Claims Section*

s/ Steven I. Frahm

May 12, 2008

Of Counsel

# APPENDIX A

**<u>Internal Revenue Code of 1986 (26 U.S.C.):</u>**

**§ 752. Treatment of certain liabilities**

**(a) Increase in partner's liabilities.**--Any increase in a partner's share of the liabilities of a partnership, or any increase in a partner's individual liabilities by reason of the assumption by such partner of partnership liabilities, shall be considered as a contribution of money by such partner to the partnership.

**(b) Decrease in partner's liabilities.**--Any decrease in a partner's share of the liabilities of a partnership, or any decrease in a partner's individual liabilities by reason of the assumption by the partnership of such individual liabilities, shall be considered as a distribution of money to the partner by the partnership.

. . . .

**§ 6110. Public inspection of written determinations**

. . . .

**(b) Definitions.**--For purposes of this section--

**(1) Written determination.**–

**(A) In general.**--The term "written determination" means a ruling, determination letter, technical advice memorandum, or Chief Counsel advice.

**(B) Exceptions.**--Such term shall not include any matter referred to in subparagraph (C) or (D) of section 6103(b)(2).

. . . .

**(k) Special provisions.--**

. . . .

**(3) Precedential status.**--Unless the Secretary otherwise establishes by regulations, a written determination may not be used or cited as precedent. The preceding sentence shall not apply to change the precedential status (if any) of written determinations with regard to taxes imposed by subtitle D of this title.

. . . .

**§ 6225. Assessments made only after partnership level proceedings are completed**

**(a) Restriction on assessment and collection.**--Except as otherwise provided in this subchapter, no assessment of a deficiency attributable to any partnership item may be made (and no levy or proceeding in any court for the collection of any such deficiency may be made, begun, or prosecuted) before–

**(1)** the close of the 150th day after the day on which a notice of a final partnership administrative adjustment was mailed to the tax matters partner, and

**(2)** if a proceeding is begun in the Tax Court under section 6226 during such 150-day period, the decision of the court in such proceeding has become final.

. . . .

**§ 6511. Limitations on credit or refund**

**(a) Period of limitation on filing claim.**--Claim for credit or refund of an overpayment of any tax imposed by this title in respect of which tax the taxpayer is required to file a return shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later, or if no return was filed by the taxpayer, within 2 years from the time the tax was paid. Claim for credit or refund of an overpayment of any tax imposed by this title which is required to be paid by means of a stamp shall be filed by the taxpayer within 3 years from the time the tax was paid.

. . . .

**§ 7422. Civil actions for refund**

**(a) No suit prior to filing claim for refund.**--No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.

. . . .